UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GLENDA M. LEWIS and GLENN E. LEWIS, | ) ) | 1:07-cv-0497 OWW GSA |
| | ) | FINAL PRETRIAL ORDER |
| Plaintiffs, | ) ) | Motion in Limine Date: |
| v. | ) ) | 4/24/09 12:00 Ctrm. 3 |
| MAMMOTH MOUNTAIN SKI AREA, | ) | Trial Date: 5/5/09 9:00 |
| Defendants. | ) ) | Ctrm. 3 (JT-8 days) |
| | ) | |

## I.  JURISDICTION AND VENUE

1.   This Court's jurisdiction arises under Title 28 U.S.C. § 1332.  The Plaintiffs are residents of Texas and the Defendant is a California corporation.  Venue is not disputed.

## II.  JURY/NON-JURY

1.   This is a jury trial.  All parties have demanded a jury.

## III.  FACTS

A.  Undisputed Facts

1.   Defendant is a California corporation with a principal place of business in Mammoth Lakes, California.

2.   Defendant owns and operates the facilities at Mammoth Mountain Ski Area in Mono County, California.  Defendant operates

1

various wintertime and summertime recreation businesses there.

3.    One of the recreation businesses defendant operated during all relevant times is Mammoth Snowmobile Adventures, which provides guided snowmobile riding to patrons for a fee.

4.    The guiding is done by an employee of Mammoth Snowmobile Adventures, and participants use snowmobiles owned and maintained by defendant.

5.    On or about April 5, 2005, plaintiffs were members of the general public who signed up for and paid for a guided snowmobile tour.  Defendant supplied the snowmobiles, instruction on the operation of snowmobiles, and a guide to lead the snowmobiles.

6.    Defendant had guides to provide instructions to snowmobile operators.

7.    Plaintiffs commenced their snowmobile tour riding with other persons in a group.  Most snowmobiles in the group had single operators, but there were multiple snowmobiles with two riders.  Plaintiffs were riding together on one snowmobile at the time of the incident.

8.    The tour was led by Mammoth employee guide, Chris Hosking.

9.    The ride took place in mountainous terrain over the snow in areas with spectacular views, mostly on groomed trails.

10.    Toward the end of the tour, Chris Hosking led the group off trail with the tour members following behind him in single file formation.  During this part of the tour, Mr. and Mrs. Lewis were led over a wind ridge.

11.    The impact from landing on the snow after going over

the wind ridge caused Glenda Lewis to sustain a comminuted displaced 50 percent compression fracture of the T10 vertebral body with 3mm posterior displacement of a fracture fragment into the spinal cord.

12. The nature and extent of Ms. Lewis' past and residual injuries are not disputed and will be submitted by Ms. Lewis' testimony and medical records. Ms. Lewis was initially given the option of trying to let the fracture heal with rest and spine immobilization with the use of a TSLO brace, commonly referred to as a "clamshell" brace. When the fracture did not heal with the conservative care, in January 2006, Ms. Lewis underwent a three-level fusion of T9-11 with instrumentation.

13. As a result of this incident, Ms. Lewis incurred $55,326.56 in medical bills.

14. At the time of this incident, Ms. Lewis was a federal government employee performing clerical duties. As a result of her injuries, she did not work from April 5, 2005, through July 1, 2005, and worked part-time from July 1, 2005, through August 1, 2005. After her surgery, Ms. Lewis did not work from January 18, 2006, through April 12, 2006.

15. As a result of her injuries, Ms. Lewis applied for disability retirement in February 2006, which was granted on September 5, 2006. September 15, 2006, was Ms. Lewis' last day of employment.

16. If Ms. Lewis had not been injured in this accident, she claims that she would have continued working until she qualified for 20 years of service retirement, which would have been March 16, 2010.

1    17.   No further medical treatment is anticipated for Ms.
2  Lewis.

3  B.    Disputed Facts

4    1.    The nature of the wind ridge where the accident
5  occurred.

6    2.    The nature and extent of Mammoth's training and safety
7  policies as they related to taking a two-passenger snowmobile off
8  trail and over features of this type.

9    3.    Whether defendant provided adequate warnings and
10  instructions to plaintiffs.

11    4.    The nature and extent of how Chris Hosking navigated
12  the wind ridge.

13    5.    Whether Glenn Lewis was comparatively at fault for Ms.
14  Lewis' injuries.

15    6.    Whether Glenda Lewis failed to mitigate her damages by
16  not obtaining another job after going out on disability
17  retirement.

18    7.    Whether Glenda Lewis could have withdrawn her
19  application for disability retirement.

20                    IV.   DISPUTED EVIDENTIARY ISSUES

21         Liability Issues.

22    1.    Plaintiffs allege that Mammoth was grossly negligent in
23  the manner in which it conducted the snowmobile tour.   Glenn
24  Lewis' claim for loss of consortium hinges upon the viability of
25  Ms. Lewis' gross negligence claim.

26    2.    Mammoth denies all of these claims because it believes
27  the guide did not act with the requisite conduct to prove gross
28  negligence.   Mammoth alleges that Glenn Lewis was comparatively

at fault for the injuries sustained by Glenda Lewis.  Plaintiffs will dispute that Glenn Lewis was comparatively at fault or that any comparative negligence could offset Mammoth's alleged gross negligence.

Loss of Income.

3.    The parties agree that Ms. Lewis worked in an administrative role for the U.S. Army, and she had completed 16 years of civil service at the time of the accident.  She returned to work two to three months after the injury, but used all of her leave time (about 500 hours from sick leave, annual leave, and donated leave).  After the surgery, she returned to work on April 12, 2006, but prior to returning she filed for disability retirement in February 2006 because she was out of sick leave and her injuries would prevent her from competently doing her job. The application was approved by the government in September 2006, and she received disability retirement.

Plaintiffs' Contentions.

4.    Plaintiffs hired an economist to prepare a report about her lost income.  The result was past and future lost income in the amount of $289,683.00.  This amount includes lost wages before plaintiff retired in September 2006, future lost wages until she reached 20 years of civil service (March 16, 2010), lost pension benefits, and losses related to her thrift savings plan (with no offset).  Plaintiff contends the disability payments are an inadmissible collateral source.

Defendant's Contentions.

5.    Defendant disputes this amount and believes that the jury may only award between $19,715.00 and approximately

$150,000.00 based upon the report by its economist.  The amount determined by plaintiffs' economist results from an assumption that Ms. Lewis has "lost" her FERS pension.  Plaintiffs' economist believes that the disability annuity payments Ms. Lewis is receiving is a collateral source, and therefore she did not consider it in her analysis.  Defendant's economist did consider the disability annuity payments in his analysis because he does not believe that the disability pension is a collateral source. With an offset of the disability annuity payments, Ms. Lewis' loss for having to take disability retirement as opposed to her regular pension is significantly diminished.  Defendant further contends that plaintiffs' economist also failed to consider the possibility that Ms. Lewis could return to work.  Defendant alternatively contends that she could have withdrawn her application, or at least attempted to withdraw it.

Loss of Consortium.

6.    If Glenda Lewis can prove Mammoth acted with gross negligence, Glenn Lewis will ask the jury for loss of consortium damages.  Plaintiffs have stated that they do not seek any recovery based upon a loss of sexual relations.  Mammoth will dispute the nature and extent of recovery claimed by Mr. Lewis.

General Damages.

7.    The parties will disagree on the amount of general damages that should be awarded to plaintiffs.

V.   DISPUTED LEGAL ISSUES

1.    Standard of care as to Mammoth and Glenn Lewis.

2.    Disability retirement benefits/collateral source.

3.    Expert issues (to be determined, if necessary).

6

1    4.    Admissibility of liability release for limited
2  purposes.

3    5.    No disputes are currently anticipated regarding the
4  admissibility of live or deposition testimony that would require
5  briefing or motions in limine, other than the collateral source
6  rule issue.

7    6.    Several witnesses may be testifying by deposition
8  transcript.

9              VI.   SPECIAL FACTUAL INFORMATION

10   1.    Date: April 5, 2005.

11   2.    Place: U.S. Forest Service land near Mammoth Mountain
12 Ski Area.

13   3.    General nature of the incident: snowmobile tour
14 accident.

15   4.    Acts or omissions alleged:

16        a.    Plaintiffs allege that Ms. Lewis was injured
17 during a snowmobile tour.  For the price of the tour, Mammoth
18 provided the snowmobiles, general instructions regarding the use
19 of the snowmobiles, and a guide which they were to follow behind
20 in single-file line.  Glenn and Glenda Lewis were assigned a
21 double snowmobile on which Glenn was the operator and his 57-
22 year-old wife, Glenda, was the passenger.  The Mammoth guide led
23 the tour group off a feature which resulted in the Lewis
24 snowmobile making a hard landing.  As a result of the impact, Ms.
25 Lewis suffered a displaced comminuted fracture of her back,
26 necessitating a three-level fusion at T9-11.

27        b.    Plaintiff contends that Defendant was grossly
28 negligent in taking a double snowmobile off of this feature.

7

Defendant disputes that the guide's conduct rose to the level required for proving gross negligence. Mammoth contends that Glenn Lewis is comparatively at fault for the injuries sustained by Ms. Lewis.

     5.   Ages, Injuries Sustained, Medical Expenses and Lost Income:

     Plaintiffs contend as follows:

     a.   At the time of the accident on April 5, 2005, Ms. Lewis was 57 years old.

     b.   As a result of the accident, Ms. Lewis suffered a displaced 50 percent compression fracture of the T10 vertebral body with 3mm of posterior displacement of a fracture fragment into the spinal canal.

     c.   From April 5, 2005, through surgery on January 18, 2006, Ms. Lewis was immobilized in either a TLSO brace (commonly referred to as a hard clam shell brace) or a soft shell brace.

     d.   At the time of the accident, Ms. Lewis was a 16-year federal employee working as a clerk at Randolph Air Force Base. At the time of the accident, she was earning $14.53 per hour plus benefits.

     e.   Ms. Lewis did not work from April 5, 2005, through July 1, 2005, because of her injuries.

     f.   While stabilized with the continued support of a brace, Ms. Lewis returned to half days at work from July 1, 2005, through July 31, 2005.

     g.   Ms. Lewis worked full-time with accommodations from her employer from August 1, 2005, until she underwent surgery on January 18, 2006.

1    h.   On January 18, 2006, Ms. Lewis underwent a T10
2  kyphoplasty procedure with posterior lateral, cage insertion
3  fusion of T9-11.

4    i.   As a result of the surgery, Ms. Lewis developed
5  pneumonia and had to be re-hospitalized for an additional day and
6  undergo surgery to try to remove the fluid from her lungs.

7    j.   After surgery, Ms. Lewis had used up all of her
8  sick leave before the surgery and was now at the end of the
9  account of donated sick leave from her co-workers.  As she was
10 recovering from the surgery and pleural effusion, Ms. Lewis and
11 her doctors felt it was unlikely she could return to her normal
12 duties, and so she applied for a disability retirement.

13   k.   Ms. Lewis was off work from January 18, 2006,
14 until April 12, 2006.

15   l.   When Ms. Lewis returned to work full-time, her
16 paid leave had expired and she had not yet received a response
17 regarding her request for disability retirement.  She returned to
18 full-time work with her employer giving her many accommodations.
19 Although she eventually began to feel able to do her normal work
20 activities with accommodations, on September 15, 2006, her
21 employer granted her disability retirement.

22   m.   Although Ms. Lewis admits that she would be able
23 to do some type of work, she is not qualified for much and has
24 not sought new employment.  Defendant claims she has failed to
25 mitigate her damages by not obtaining replacement employment.

26   n.   Ms. Lewis has incurred $55,326.56 in medical
27 bills.

28   o.   Plaintiffs' economist has estimated her past and

9

future lost wage claim at $283,037.00.  Defendants claim they are
entitled to an offset for mitigation employment and her
retirement disability pension, and that the maximum allowed lost
wages are therefore in the $19,715.00-$150,000.00 range.

        p.   Ms. Lewis' pain level has improved since the
surgery, but she still suffers from stiffness and pain, which
limits her ability to pick up heavy items, climb stairs, ride
long distances in the car, garden, and lift up her grandchildren.

VII.  RELIEF SOUGHT

1.   The relief sought are money damages for personal injury
to plaintiff Glenda Lewis and loss of consortium damages to
plaintiff Glenn Lewis.  The specific elements of damages include:

        a.   Medical expenses past: $55,326.56.  No future
medical specials estimation.

        b.   Wage loss: plaintiffs contend: $107,085.00 past
and $175,952.00 future.  Defendant contends: $19,715.00-
$150,000.00 past and -0- future.

        c.   General damages: past and future pain and
suffering for Glenda Lewis.

        d.   General damages for loss of consortium: for Glenn
Lewis.

VIII.  DISPUTED ISSUES OF LAW

Plaintiffs.

1.   Legally, plaintiffs believe this is a simple case of
gross negligence.  CACI 425 provides that "gross negligence is
the lack of any care or an extreme departure from what a
reasonably careful person would do in the same situation to
prevent harm to oneself or to others."

10

2. As set forth above, the only other legal theory to be addressed by this Court is the Collateral Source doctrine which can be briefed for a motion in limine.

Defendant.

3. Defendant believes the following points of law will be at issue before trial:

a. Applicable jury instructions.

b. Collateral source issue related to disability pension benefits.

c. Possible admissibility of expert testimony (subject to further depositions to be completed by April 3, 2009).

d. Evidentiary disputes for the purposes of motions in limine (to be determined by the parties based upon any disagreements, if any).

## IX. ABANDONED ISSUES

1. Plaintiffs' causes of action for negligence, premises liability, and common carrier were disposed of with the court's order granting summary adjudication of these issues. Defendant's defenses to these claims that do not also apply to the existing claims have been abandoned.

## X. WITNESSES

Lay Witnesses

1. Glenda Lewis

2. Glenn Lewis

3. Madeleine Olivier

4. Paul Olivier

5. Christopher Hosking

11

6. Robert "Mike" Colbert

7. Katherine Singleton

8. Wendy Maron

9. Omar Moheize

10. Ammar Moheize

11. Karen Stalney

12. Richard Stanley

13. Jonathon Vos

14. Jennifer Ripon, D.O.

15. Timothy Spencer, D.O.

Expert Witnesses

16. Ari Makinen (Plaintiffs, Snowmobiling)

17. Stephanie Rizzardi (Plaintiffs, Economist)

18. Laura Liptai, Ph.D. (Plaintiffs, Biomechanical Engineer)

19. Timothy Hargrove (Defendant, Snowmobiling)

20. Erik Volk (Defendant, Economist)

21. Andrew "Mike" O'Brien (Defendant, Vocational Rehabilitation)

Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

<u>CAUTION</u>

Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such. No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

XI.   EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

<u>CAUTION</u>

Only exhibits so listed will be permitted to be offered into evidence at trial, except as may be otherwise provided in this order.  No exhibit not designated in this pretrial order shall be marked for identification or admitted into evidence at trial.

1.    Mammoth incident report dated April 5, 2005.

2.    Mammoth Mountain Ski Area snowmobile incident report form dated April 5, 2005.

3.    Drawing of witness Paul Olivier which was Exhibit A to his deposition.

4.    Twenty-five photographs taken during Mammoth trip produced by Glenn and Glenda Lewis.

5.    Map of Mammoth Snowmobile Adventure trails.

6.    Mammoth Snowmobile and Snowmobile Tour Guide Training Materials (Exhibit C to Colbert deposition).

7.    Hosking employment evaluation file (Exhibit D to Colbert deposition).

8.    Hosking certification documents (Exhibit E to Colbert deposition).

9.    Mammoth snowmobile safety DVD/video.

10.   Applicant's Statement of Disability.

11.   Supervisor's Statement.

12.   Letter from Glenda Lewis requesting disability retirement dated February 27, 2006.

13.   Letter from Jennifer Rippon, D.O. dated March 7, 2006.

13

1    14.   Letter from Timothy Spencer, D.O. dated February 7,
2  2006.
3    15.   Letter granting retirement disability dated September
4  5, 2006.
5    16.   Medical records and bills of Glenda Lewis.
6    17.   Expert report of Stephanie Rizzardi.
7    18.   Expert report of Dr. Laura Liptai.
8    19.   Expert Declaration of Ari Makinen.
9    20.   Expert Report of Timothy Hargrove.
10   21.   Expert Report of Erik Volk.
11   22.   Expert Report of Andrew O'Brien.
12   23.   Deposition exhibits from expert witnesses.
13   24.   Expert file for Stephanie Rizzardi.
14   25.   Expert file for Ari Makinen.
15   26.   Expert file for Dr. Laura Liptai.
16   27.   Expert file for Timothy Hargrove.
17   28.   Expert file for Erik Volk.
18   29.   Expert file for Andrew O'Brien.
19      The parties are still working on the joint exhibit list.  A
20  completed joint exhibit list will be submitted per the court's
21  Final Pretrial Order.
22                    XII.   DISCOVERY DOCUMENTS
23      Only specifically designated discovery requests and
24  responses will be admitted into evidence.  Any deposition
25  testimony shall be designated by page and line and such
26  designations filed with the Court on or before April 10, 2009.
27  The opposing party shall counter-designate by line and page from
28  the same deposition and shall file written objections to any

                              14

question and answer designated by the opposing party and filed
with the court on or before April 20, 2009.

Written discovery shall be identified by number of the
request.  The proponent shall lodge the original discovery
request and verified response with the courtroom deputy one day
prior to trial.  The discovery request and response may either be
read into evidence, or typed separately, marked as an exhibit, as
part of the exhibit marking process, and offered into evidence.

1.    Plaintiff Glenda Lewis' Responses to Mammoth's
Interrogatories, Set One.

2.    Plaintiff Glenn Lewis' Responses to Mammoth's
Interrogatories, Set One.

3.    Defendant's Responses to Plaintiffs' Interrogatories,
Set One.

### XIII.   STIPULATIONS

1.    The parties have stipulated to the total medical
expenses of $55,326.56.  The parties have also stipulated to the
extent and nature of the injuries and medical treatment as set
forth in the Plaintiffs' testimony and as more fully detailed in
her medical records.

### XIV.   AMENDMENTS - DISMISSALS

1.    None.

### XV.   FURTHER TRIAL PREPARATION

A.    Trial Briefs.

Counsel are directed to file a trial brief in this matter by
April 29, 2009.  No extended preliminary statement of facts is
required.  The brief should address disputed issues of
substantive law, disputed evidentiary issues of law that will not

be resolved in limine, and any other areas of dispute that will require resolution by reference to legal authority.

B.    Duty of Counsel To Pre-Mark Exhibits.

1.    Counsel for the parties are ordered to meet and conduct a joint exhibit conference on April 6, 2009, at 10:00 a.m. at the law offices of Cornwell & Sample LLP, 7045 N. Fruit Ave., Fresno, California, for purposes of pre-marking and examining each other's exhibits and preparing an exhibit list.  All joint exhibits will be pre-marked JX1-JX50; all of the plaintiff's exhibits will be pre-marked with numbers 51-100; all of defendant's exhibits will be pre-marked with numbers 101-150.

2.    Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3.    Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for use as follows:

a.    Two (2) sets to be delivered to the Courtroom Deputy Clerk, Alice Timken, no later than 4:00 p.m. on May 1, 2009, an original for the court and one for the witness.

b.    One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own use.

4.    Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits:

a. Joint exhibits, i.e., any document which both sides desire to introduce into evidence, will be marked as a joint exhibit (JX), and numbered JX1-___. Joint exhibits shall be listed as such in the exhibit list in a column that notes they are admitted into evidence without further foundation;

b. As to any exhibit, not a joint exhibit, to which there is no objection to its introduction into evidence, the exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's Exhibit ___ in evidence, and will be listed in the exhibit list as the exhibit of the offering party;

c. The exhibit list shall include columns for noting objections to exhibits. The first column will list any objections as to foundation; i.e., Plaintiff's Foundation 2 – "not authenticated."

d. The exhibit list shall include a second column for noting substantive objections to exhibits based on any other grounds; i.e., "hearsay, improper opinion, irrelevant."

e. The exhibit list shall include a description of each exhibit on the left-hand side of the page, and the three columns outlined above (as shown in the example below).

<u>List of Exhibits</u>

| <u>Exhibit #</u> | <u>Description</u> | Admitted <u>In Evidence</u> | Objection <u>To Foundation</u> | Other <u>Objection</u> |
|---|---|---|---|---|

f. The completed exhibit list shall be delivered to the Courtroom Deputy Clerk on or before May 1, 2009, at 4:00 p.m.

g. If originals of exhibits cannot be located, copies may be used, however, the copies <u>must be legible and accurate</u>. If any document is offered into evidence that is partially not

legible, the Court sua sponte will exclude it from evidence.

C.   **Discovery Documents**.

   1.   Counsel shall file a list of discovery documents with the Courtroom Deputy Clerk at the same time and date as the witness and exhibit lists are lodged with the Courtroom Deputy Clerk, unless the discovery documents are marked as exhibits, which counsel intend to use at trial by designating by number, the specific interrogatory, request for admission, or other discovery document.  Counsel shall comply with the directions of subsection XII (above) for introduction of the discovery document into evidence.

D.   **Motions In Limine**.

   1.   The motions in limine shall be filed by April 10, 2009, and any responses shall be filed by April 20, 2009.  The Court will conduct a hearing on motions in limine in this matter on April 24, 2009, at 12:00 p.m. in Courtroom 3, Seventh Floor, before the Honorable Oliver W. Wanger United States District Judge, at which time all evidentiary objections, to the extent possible, will be ruled upon, and all other matters pertaining to the conduct of the trial will be settled.

E.   **Trial Documents**.

   1.   **Exhibits To Be Used With Witness**.  During the trial of the case, it will be the obligation of counsel to provide opposing counsel not less than forty-eight hours before the witness is called to the witness stand, the name of the witness who will be called to testify and to identify to the Court and opposing counsel any exhibit which is to be introduced into evidence through such witness that has not previously been

1  admitted by stipulation or court order or otherwise ruled upon,
2  and to identify all exhibits and other material that will be
3  referred to in questioning of each witness.  If evidentiary
4  problems are anticipated, the parties must notify the court at
5  least twenty-four hours before the evidence will be presented.

6      2.    The parties intend to introduce certain exhibits via
7  property display.  However, the parties do not believe that any
8  special handling of trial exhibits is required.  In the event of
9  an appeal, each party agrees to maintain the exhibits offered at
10  trial, and to present them at the Court's request.

11  **F.    Counsel's Duty To Aid Court In Jury Voir Dire**.

12      1.    Counsel shall submit proposed voir dire questions, if
13  any, to the Courtroom Deputy Clerk at **atimken@caed.uscourts.gov**
14  on or before May 1, 2009, at 4:00 p.m.  Counsel shall also
15  prepare a joint "statement of the case" which shall be a neutral
16  statement, describing the claims and defenses for prospective
17  jurors, to be used in voir dire.

18      2.    In order to aid the court in the proper voir dire
19  examination of the prospective jurors, counsel are directed to
20  lodge with the Court the day before trial a list of the
21  prospective witnesses they expect to call if different from the
22  list of witnesses contained in the Pre-Trial Order of the Court.
23  Such list shall not only contain the names of the witnesses, but
24  their business or home address to the extent known.  This does
25  not excuse any failure to list all witnesses in the Pre-Trial
26  Order.

27      3.    Counsel shall jointly submit, to the Courtroom Deputy
28  Clerk, the day before trial, a neutral statement of the claims

and defenses of the parties for use by the court in voir dire.

G.    <u>Counsel's Duty To Prepare And Submit Jury Instructions</u>.

1.    All proposed jury instructions and verdict forms shall be filed and served on or before May 3, 2009, by 4:00 p.m.  Jury instructions shall be submitted in the following format.

2.    Proposed jury instructions, including verdict forms, shall be submitted via e-mail to <u>dpell@caed.uscourts.gov</u> formatted in WordPerfect for Windows 10.  Counsel shall be informed on all legal issues involved in the case.

3.    The parties are required to jointly submit one set of agreed upon jury instructions.  To accomplish this, the parties shall serve their proposed instructions upon the other fourteen days prior to trial.  The parties shall then meet, confer, and submit to the Court the Friday before the trial is to commence, one complete set of agreed-upon jury instructions.

4.    If the parties cannot agree upon any instruction, they shall submit a supplemental set of instructions designated as not agreed upon by May 3, 2009, at 4:00 p.m.

5.    Each party shall file with the jury instructions any objection to non-agreed upon instructions proposed by any other party.  All objections shall be in writing and shall set forth the proposed instruction objected to in its entirety.  The objection should specifically set forth the objectionable matter in the proposed instruction and shall include a citation to legal authority explaining the grounds for the objection and why the instruction is improper.  A concise statement of argument concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed

instruction covering the subject or issue of law.

6. <u>Format</u>. The parties shall submit one copy of each instruction. The copy shall indicate the party submitting the instruction, the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the test of the instruction, the legal authority supporting the instruction, and a legend in the lower lefthand corner of the instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction. Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

7. All instruction should be short, concise, understandable, and neutral statements of the law. Argumentative or formula instructions will not be given, and should not be submitted.

8. Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9. Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form. Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

10. Failure to comply with these rules concerning the

preparation and submission of instructions and verdict forms may
subject the non-complying party and/or its attorneys to
sanctions.

### XVI.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR
### PRESENTATION OF EVIDENCE

1.    If counsel intends to use a laptop computer for
presentation of evidence, they shall <u>contact Alice Timken,
Courtroom Deputy Clerk, at least one week prior to trial</u>.  The
Courtroom Deputy Clerk will arrange a time for any attorney to
bring any laptop to be presented to someone from the Court's
Information Technology Department, who will provide brief
training on how the parties' electronic equipment interacts with
the court's audio/visual equipment.  If counsel intend to use
PowerPoint, the resolution should be set no higher than 1024 x
768 when preparing the presentation.

2.   ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND
COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL
BE REFERRED TO THE COURTROOM DEPUTY CLERK.

### XVII.   FURTHER DISCOVERY OR MOTIONS

1.    None.

### XVIII.   SETTLEMENT

1.    The parties have exhausted good faith efforts at
settlement.

### XIX.   SEPARATE TRIAL OF ISSUES

1.   Unnecessary.

### XX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

1.   Unnecessary.

///

## XXI.   ATTORNEYS' FEES

1.   Defendant contends that they have the right to pursue attorneys' fees as outlined in the Liability Release and Assumption of Risk Agreement signed by Plaintiffs.  Plaintiffs dispute this right.

## XXII.   ESTIMATE OF TRIAL TIME

1.   Six to eight days.

## XXIII.   TRIAL DATE

1.   May 5, 2009, at 9:00 a.m., in Courtroom 3, on the Seventh Floor.

## XXIV.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

1.   There will be an eight person jury, with four peremptory challenges per side.

## XXV.   AMENDMENT OF FINAL PRETRIAL ORDER

1.   The Final Pretrial Order shall be reviewed by the parties and any corrections, additions, and deletions shall be drawn to the attention of the Court immediately.  Otherwise, the Final Pretrial Order may only be amended or modified to prevent manifest injustice pursuant to the provisions of Fed. R. Civ. P. 16(e).

## XXVI.   MISCELLANEOUS

1.   The parties may use Trial Director, Live Note, and both sides anticipate using Elmo.

IT IS SO ORDERED.

Dated:   April 8, 2009            /s/ Oliver W. Wanger
                          UNITED STATES DISTRICT JUDGE